**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF NEW MEXICO**

In re:   CHARLES EDWARD NORIEGA,                    No. 7-10-13981 JR

      Debtor.

PAULA A. BEVERAGE,

      Plaintiff,

v.                                                                    Adversary No. 11-1005 J

CHARLES EDWARD NORIEGA and
PATTY GRADY NORIEGA,

      Defendants.

**MEMORANDUM OPINION**

THIS MATTER is before the Court following a trial on the merits of this adversary proceeding.    The Court conducted a two-day evidentiary trial in Roswell, New Mexico, and took the matter under advisement.[1]    All parties appeared *pro se.*    Plaintiff, Paula Beverage, asserts that Charles Noriega's discharge should be denied pursuant to 11 U.S.C. § 727(a)(2), (a)(3), and (a)(4) based on allegations that the Defendants 1) transferred vehicles to be crushed for recycling within one year prior the filing of Mr. Noriega's bankruptcy case with the intent to

---

[1] Paula Beverage filed this adversary proceeding objecting to discharge and objecting to the dischargeability of a particular debt on January 5, 2011.   On March 14, 2011, Plaintiff filed a "Criminal Complaint,"a "Second Criminal Complaint" and a "Request to Annexed [sic.] Second Contract Isssue."  *See* Docket Nos. 17, 18, and 19.  The Court entered orders striking the Criminal Complaint and the Second Criminal Complaint, and denied the Plaintiff's Request to Annexed Second Contract Issue.  *See* Docket Nos. 27, 28, and 29.   On May 4, 2011, Plaintiff filed an Amended April 29, 2011 Petition to Bar Deffendant from Discharge Jointing Defendant as a Real party of Interest Objection o Discharge of Debtor or Discharge of Creditor ("1st Amended Complaint"), and on July 20, 2011, Plaintiff filed a Second Amendended [sic.] Complaint to Bar Defendant from Discharge Join Defendant as a Real Party of Interest Objection to the Discharge of Debtor or Discharge of Creditor ("2nd Amended Complaint").  *See* Docket No. 42 and Docket No. 62.   After several discovery disputes and requests to continue, the Court scheduled a trial on the merits in Roswell, New Mexico on December 19 and 20, 2011.

hinder, delay, or defraud creditors and continued to own and operate the recycling/salvage business while making it appear that he transferred his business to another person, all with intent to hinder, delay or defraud creditors;  2) failed to keep or preserve records of a recycling/salvage business that Mr. Noriega continues to own and operate;  and 3) failed to disclose in his Statement of Financial Affairs and Schedules the recycling/salvage business, the assets of that business, and other assets, including a home, personal vehicles, salvageable automobiles fixed for re-sale, and salvaged junk sold for profit as part of a recycling business.  Plaintiff further contends that Mr. Noriega continues to operate a profitable business that he has failed to disclose in connection with his bankruptcy case.  Plaintiff also seeks a determination of non-dischargeability under 11 U.S.C. § 523(a)(6), premised on her assertion that Defendants wrongfully converted copper and metal that belonged to Plaintiff.  Patty Grady Noriega is Defendant Charles Noriega's non-filing spouse.   Consequently, to the extent the discharge of Defendant Charles Noriega's obligations in his Chapter 7 bankruptcy case would discharge the community debt of Defendant Patty Grady Noriega, Plaintiff seeks to deny the community discharge.

After consideration of the testimony and evidence presented at trial, and being otherwise sufficiently informed, the Court finds that Plaintiff has failed to satisfy her burden of proving, by a preponderance of the evidence, that the Defendant Charles Noriega's discharge should be denied.  Nor has the Plaintiff proved, by a preponderance of the evidence, that the debt Defendant Charles Noriega owes Plaintiff is non-dischargeable under 11 U.S.C. § 523(a)(6) as a debt arising from a willful and malicious injury to Plaintiff.

Defendant Charles Noriega is a convicted felon who was released from prison in August of 2003. *See* Defendants' Exhibit K. In 2004, the Secretary, New Mexico Taxation and Revenue Department initiated proceedings against Charles Noriega d/b/a Bumper to Bumber Auto Repair as Case No. D-0504-CV-2004-784 ("State Court Injunction Action"). *See* Exhibit H. As part of the State Court Injunction Action, Charles Noriega entered into a Stipulated Injunction entered December 29, 2004 whereby he was enjoined from engaging in the business of a motor vehicle dismantler unless he becomes properly licensed to do so. *See* Exhibit 411 – 412. On August 1, 2007, an Injunction from Engaging in Business ("Injunction") was entered in the State Court Injunction Action that enjoined Defendant Charles Noriega from "engaging in the business of motor vehicle dismantler (recycler) or any similar business within the State of New Mexico" *See* Exhibit 365 – 366. The Injunction also sealed the Defendant Charles Noriega's business premises at all known locations and prohibited Defendant Charles Noriega's access to those locations except as authorized by the state court. *Id.* Defendant Charles Noriega sought to reconsider the Injunction entered in the State Court Injunction Action. *See* Exhibit No. 367 – 369. In 2008, an Order Modifying Sealing Order ("Modification Order") was entered in the State Court Injunction Action, which, among other things: 1) confirmed that the Stipulated Injunction and the Injunction remain in effect, and that Defendant Charles Noriega is prohibited from engaging in the business of an auto recycler unless and until he obtains a license to do so from the state of New Mexico; 2) permitted Defendant Charles Noriega to access two business locations for the purpose of moving certain vehicles from property located at 407 Husky Road to property located at 6217 Devonian Road under supervision and with approval of a law enforcement officer employed by the New Mexico State Police; and 3) permitted Defendant

3

Charles Noriega to access the property located at 407 Husky Road to conduct his automotive

repair business. *See* Exhibits 420 – 422. The Modification Order included a list of nineteen

vehicles designated as Charles Noriega's "personal vehicles." *See* Exhibit 423. The State Court

Injunction Action remained pending as of August 2010, with the Secretary of New Mexico State

Taxation and Revenue Department seeking to hold Defendant Charles Noriega in contempt for

failing to comply with the prior orders entered in the State Court Injunction Action, including the

Modification Order. *See* Exhibits 429 - 445.[2]

Plaintiff Paula Beverage obtained a judgment by default against Charles Noriega in 2009

in connection with an action filed by Paula Beverage against Charles Noriega in the Fifth

Judicial District Court, as Case No. CV-08-1052 ("State Court Action"). *See* Exhibit No. 542.

The judgment entered in the State Court Action recites that the Defendant Charles Noriega did

not appear at the trial on the merits held in the State Court Action on August 29, 2009, that the

Mr. Noriega executed a written promissory note in favor of Plaintiff in the amount of $100,000

on August 16, 2008, and that Mr. Noriega failed to make any payments on the note. *Id.* The

judgment awarded Plaintiff $100,000 plus interest from August 16, 2008 until paid. *Id.*

Defendant Charles Noriega filed a voluntary petition under Chapter 7 of the Bankruptcy

Code on August 6, 2010. Defendant Patty Noriega Grady is Mr. Noriega's non-filing spouse.

Additional Documentary Evidence Before the Court:

Plaintiff submitted hundreds of receipts from the year 2006 that appear to relate to a

mechanic business, and four receipts dated January 10, 2008. *See* Plaintiff's Exhibits 1 – 119,[3]

---

[2] Several of Plaintiff's Exhibits are documents from the State Court Injunction Action that were filed post-petition. *See, e.g.* Exhibit 446 – 450 (Order of Contempt and Order Appointing Receiver to Abate Nuisance), and Exhibits 451 – 524. Inasmuch as Plaintiff's objections to discharge relate to pre-petition conduct, these exhibits, though admitted into evidence, are not particularly relevant.

[3] Plaintiff marked Exhibit 120 as "obsolete" and did not offer Exhibit 120 into evidence at trial.

4

121 through 126,[4] 130 through 132, and Exhibits 133 – 136.  Except for Exhibits 130 – 132, that

identify B & B Auto, and Exhibit 133, a Receiving Record dated January 10, 2008 for $550.00 to

"cut lot with Brush Hog and Pick up Trash and Haul off" that reflects the name of Charles

Noriega, none of the receipts admitted into evidence identify Charles Noriega or a business

name.

Plaintiff's Exhibits 137 – 169, admitted at trial, are advertisements from the Shopper

from January 2008 through July 2011.    The header from the Shopper includes the following

statement:  "15 Word Ad for 4 Weeks for $4.20."    Exhibit 137, dated January 21, 2008,

includes the following advertisement:

> FREE JUNK CAR REMOVAL
> Will pay top dollar for most.  No titles needed
> 626-5623  625-0598

The phone number reflected in the advertisement, 626-5623, is Gloria Noriega's phone number.

Gloria Noriega is Charles Noriega's mother.  Exhibits 138 - 140, dated June 25, 2008, September

3, 2008, and December 17, 2008, include the identical advertisement.   Exhibit 141, dated July 1,

2009, contains the identical advertisement, but lists only 626-5623 as the telephone number.

Exhibit 142, dated August 5, 2009 contains an advertisement for "FREE JUNK CAR

REMOVAL" that is identical to Exhibit 140.   Exhibit 143, dated September 30, 2009, contains

the same advertisement, but lists different telephone numbers, including 623-1451.    The

telephone number, 623-1451, is Defendant Patty Grady Noriega's telephone number.

Advertisements for "FREE JUNK CAR REMOVAL" placed in the Shopper for from October

2009 through July 2011 reflect this same telephone number.[5]  Some of the advertisements from

2010 and 2011 also solicit "any scrap metal" (*See, e.g.,* Exhibit 146 – 150), state that "we haul

---

[4] Plaintiff marked Exhibits 127 – 129 as "obsolete" and did not offer those exhibits into evidence at trial.
[5] *See* Exhibits 144 – 170.

off the property site" (*See, e.g.,* Exhibit 152 – 153), and solicit "Old farm equipment, 18 wheelers (*See, e.g.,* Exhibit 156 - 157).

Advertisements placed in the American Classifieds from 2010 and 2011 advertise for "Free Car and Truck Removal" (*See, e.g.,* Exhibit 171), solicit "junk cars, trucks, farm equipment, diesel trucks" (*See, e.g.,* Exhibit 173, 175) using Patty Grady Noriega's telephone number.

Little documentary evidence was presented that would establish that Bumper to Bumper is (or was) Charle Noriega's business *after* 2004. There are many exhibits that show that auto parts were sold to Bumper to Bumper in 2006, 2008, 2009, but none of these receipts identify Charles Noriega as the owner/operator of Bumper to Bumper. *See, e.g,* Exhbits 228, 229, 230, 231 and Exhibit 562. Exhibit 251 – 252 reflects Charles Noriega (dba Bumper to Bumper), but is dated in 2004. Similarly, a Form W-9 lists Charlie Noriega with a business name, Bumper to Bumper, but is undated. *See* Exhibit 286. Receipts from Names and Numbers from 2008 and 2009 are directed to Bumper to Bumper Auto Center, Attn: Charles Noriega. *See* Exhibit559. However, a letter dated September 19, 2011 from Names and Numbers to Charles Noriega indicates that Names and Numbers "inadvertently r[a]n a listing for your old business in the last three editions of Names and Number phonebook." *See* Exhibit J.

Handwritten lists of vehicles and vehicle identification numbers were also admitted into evidence. *See* Exhibit 262 – 280, 283 and 284. None of the lists include dates, have any indication of who prepared them, or for what purpose.

Photographs and property profiles for the following properties were also entered into evidence: 405 Huskey Road (*See,* Exhibits 300, 301, 320 - 325); 407 Huskey Road (*See,* Exhibits 300, 301, 302 – 305, 320 - 325); 6217 Devonian Road (*See,* Exhibit 306, 331 - 333);

1721 N. Lea (*See* Exhibits 307 – 309); 609 W. Malamute (*See,* Exhibit 310 – 312); 1801 N. Union (*See* Exhibit 313- 319); 107 W. Tilden (*See,* Exhibits 328 – 330) . Patty Grady Noriega owns the property located at 1801 N. Union as her separate property. *See* Exhibit L. Gloria Noriega, Defendant's mother, owns the property located at 107 W. Tilden, 401 Husky Road, 403 Husky Road, and 605 Malamute Street. *See* Exhibit 329 and Exhibit L. Charles Noriega's uncle owns the property located at 405 Husky Road. *See* Exhibit L. Charles Noriega owns the property located at 6217 Devonian. (*See* Exhibit 331). Charles Noriega and Patty Grady live in the property located at 605 Malamute Street.

Patty Grady Noriega's bank records from her account at American First Credit Union from August 2009 through April 2010 reflect savings, checking and Visa account balances. *See* Exhibit A. Patty Grady Noriega's bank records from Otero Federal Credit Union from August 2009 through August 31, 2010 reflect similar information.

<u>The Criminal Action:</u>

In 2007, the State of New Mexico filed a criminal complaint against Defendant Charles Noriega as Case No. CR 07-236 ("State Court Criminal Action"), charging Mr. Noriega with, among other things, committing the offence of dismantling motor vehicles. *See* Exhibits 355 and 356. In connection with the State Court Criminal Action, an Eligibility Determination for Indigent Defense Services was prepared for Defendant Charles Noriega that includes a statement by Mr. Noriega that his net take home pay is $300.00 weekly. *See* Exhibit 358 – 359. In May of 2008, the State of New Mexico amended its criminal complaint, charging Defendant Charles Noriega with 1) dismantling or destruction of vehicles without certificates of title or other proof of ownership; and 2) engaging in the business of wrecking or dismantling vehicles for the purpose of reselling parts or scrap material without an auto recycler license. *See* Exhibit 385

7

and Exhibit 556-A.   The charges in the State Court Criminal Action were dismissed.  *See*

Exhibit 388A.   Following dismissal, Mr. Noriega filed a motion seeking the return of seized

property.   *See* Exhibit 389.  The State of New Mexico agreed to the release of the items to

Defendant Charles Noriega, and Defendant Charles Noriega withdrew his Motion for Return of

Seized Property. *See* Exhibits 392 – 393.

Documentary Evidence Relating to Defendant Charles Noriega's Bankruptcy Case:

The Statement of Financial Affairs ("SOFA") filed in Charles Noriega's bankruptcy case

was the sole document admitted into evidence at trial relating to the bankruptcy case.   No other

documents relating to the bankruptcy case were offered in evidence.  In response to every

question on the SOFA, Charles Noriega checked the box, "None."

Testimony presented at trial:

Defendants Charles Noriega and Patty Grady Noriega both testified at trial.   Mr. Noriega

denies that he actively operated a business after 2007.   He testified that his business was

confiscated, that the state seized his property and made him close his business so that he had to

dis-incorporate his tow business, and that the state criminal charges were dismissed because the

state was not able to prove that he was recycling without a license.  He explained that the

business telephone numbers that continued to run in Names and Numbers for the last three or

four years were old numbers that had already expired.   He acknowledged that he was cited in

2004 for dismantling without a license, and that he used to operate a tow business and a

mechanic's shop in 2004.   He further testified that he has not had a mechanic's license since

2006 or 2007, had no other business licenses, and does not own or have access to any tractors.

Regarding business income, Mr. Noriega testified that he does whatever he can to make a

dollar, and that he is a mechanic only on his personal vehicles and for vehicles owned by some

8

of his friends.   His uncle operates a towing business.  Mr. Noriega testified that there is a tow truck that he co-owns with his mother that is broken down and located on his mother's property. He acknowledged that he has run advertisements in the Shopper or American General to buy junk or to pick it up for people who want it off of their property, but testified that some of the advertisements are his mother's advertisements.   Mr. Noriega also testified that a junked car could generate $100 to $150, depending on the market, and that the price could go up to $200 or $250.  Mr. Noriega has never obtained a recycler's license.  Regarding the real properties, Mr. Noriega testified that the only real property he owns is the property located on Devonian.  The property located on Husky road is his mother's mechanic's shop.

Ms. Noriega testified that there are many other folks who live out near the Noriegas, and that it is not just the Noriegas who own the property located along Husky Road.   She testified further that she and Mr. Noriega live in the big house located on Malamute that is owned by Charles Noriega's mother, Gloria Noriega.   She also acknowledged that some of the advertisements in the Shopper list her telephone number and Mr. Noriega's cell phone number, and that she allowed Mr. Noriega to use her telephone number in those advertisements.  The Plaintiff did not elicit testimony from either Defendant regarding whether or to what extent Mr. Noriega earned any income from any advertisements placed in the Shopper or the American Classifieds.

Plaintiff Paula Beverage did not testify at trial.

DISCUSSION

A.   Denial of Discharge under 11 U.S.C. § 727

One of the primary purposes of the Bankruptcy Code "is to provide the honest, but unfortunate, debtor a fresh start."  *Dalton v. Internal Revenue Service,* 77 F.3d 1297, 1300 (10th

9

Cir. 1996)(citing *Grogan v. Garner,* 498 U.S. 279, 286-287, 111 S.Ct. 654, 659-660, 112

L.Ed.2d 755 (1991)).   Thus the discharge provision under 11 U.S.C. § 727 "allows debtors to

receive a general discharge of their obligations . . . 'unhampered by the pressure and

discouragement of preexisting debt.'"  *Farouki v. Emirates Bank Int'l, Ltd.,* 14 F.3d 244, 249 (4th

Cir. 1994)(quoting *Lines v. Frederick,* 400 U.S. 18, 19, 91 S.Ct. 113, 114, 27 L.Ed.2d 124

(1970)).   In exchange for receiving a "fresh start" through bankruptcy, debtors must "accurately

and truthfully present themselves before the court."  *Freelife Int'l, LLC v. Butler (In re Butler),*

377 B.R. 895, 915 (Bankr.D.Utah 2006)(citing *Farouki,* 14 F.3d at 249).   Even so, because "a

total bar to discharge is an extreme penalty[,]"[6] the Court construes exceptions to discharge

"strictly against the creditor and liberally in favor of the debtor."[7]  The creditor seeking denial of

discharge under 11 U.S.C. § 727 bears the initial burden of proving each element by a

preponderance of the evidence.[8]

1. Whether Defendant Charles Noriega should be denied a discharge under 11 U.S.C. §727(a)(2)

Under 11 U.S.C. § 727(a)(2), a debtor is not entitled to receive a discharge if

> The debtor, with intent to hinder, delay, or defraud a creditor or an officer of the estate charged with custody of property under this title, has transferred, removed, destroyed, mutilated, or concealed, or has permitted to be transferred, removed, destroyed, mutilated, or concealed –
>> (A) Property of the debtor, within one year before the date of the filing of the petition; or

---

[6] *Rosen v. Bezner,* 996 F.2d 1527, 1534 (3rd Cir. 1993).  *See also Associated Bank, N.A. v. Sever (In re Sever),* 438 B.R. 612, 619 (Bankr.C.D.Ill. 2010)(stating that '[a] denial of discharge is an extremely harsh and drastic penalty . . . . reserved for the 'truly pernicious debtor.'")(citing *In re Lindemann,* 375 B.R. 450 (Bankr.N.D.Ill. 2007) and quoting *In re Johnson,* 98 B.R. 359, 367 (Bankr.N.D.Ill. 1988)).

[7] *In re Duncan,* 562 F.3d 688,  695 (5th Cir. 2009)(citation omitted); *In re Kontrick,* 295 F.3d 724, 736 (7th Cir. 2002)(same), *aff'd,* 540 U.S. 443, 124 S.Ct. 906, 157 L.Ed.2d 867 (2004).  *See also Gullickson v. Brown (In re Brown),* 108 F.3d 1290, 1292 (10th Cir. 1997)(stating that "the Bankruptcy Code must be construed liberally in favor of the debtor and strictly against the creditor.")(citation omitted).

[8] *Butler,* 377 B.R. at  915 (citations omitted).  *See also, In re Retz,* 606 F.3d 1189, 1196 (9th Cir. 2010)("Those objecting to discharge 'bear[ ] the burden of proving by a preponderance of the evidence that [the debtor's] discharge should be denied.'")(quoting *Khalil v. Developers Sur. & Indem. Co. (In re Khalil),* 379 B.R. 163, 172 (9th Cir. BAP 2007), *aff'd,* 578 F.3d 1167, 1168 (9th Cir. 2009)).

10

(B) Property of the estate, after the date of the filing of the petition.

11 U.S.C. § 727(a)(2)(A) and (B).

The party objecting to discharge under this section "must show by a preponderance of the evidence that (1) the debtor transferred, removed, concealed, destroyed or mutilated, (2) property of the estate, (3) within one year prior to the bankruptcy filing, (4) with the intent to hinder, delay, or defraud a creditor." *Brown,* 108 F.3d at 1293 (citing 11 U.S.C. § 727(a)(2)(A)). *Actual* intent to defraud creditors is required under this section. *In re Warren,* 512 F.3d 1241, 1249 (10th Cir. 2008)(" 'To deny a discharge under § 727(a)(2), the court must find *actual* intent to defraud creditors.' ")(quoting *Marine Midland Bus. Loans, Inc., v. Carey (In re Carey),* 938 F.2d 1073, 1077 (10th Cir. 1991)).

Plaintiff failed to show that Defendant Charles Noriega transferred any property that would have otherwise been property of the estate within one year prior to the commencement of his bankruptcy case. Nor has Plaintiff shown that Defendant Charles Noriega transferred any estate property post-petition. Property of the estate is defined in 11 U.S.C. § 541, and consists of "all legal or equitable interests of debtor in property as of the commencement of the case." 11 U.S.C. § 541(a)(1). The interests of the debtor's spouse in community property as of the commencement of the case also constitute property of the bankruptcy estate. 11 U.S.C. § 541(a)(2). At trial, Plaintiff attempted to show that several properties located along Husky Road are owned by Defendant Charles Noriega. No evidence was presented that would demonstrate that Charles Noriega had an ownership interest in any real property other than the property located on Devonian. Nor was sufficient evidence presented to demonstrate that Defendant Charles Noriega transferred or concealed any personal property within one year prior to the commencement of the bankruptcy case with the intent to hinder, delay or defraud creditors.

11

Finally, the evidence did not establish that Defendant Charles Noriega transferred any property of the estate.  Consequently, Plaintiff cannot prevail on her claim to deny Defendant Charles Noriega's discharge under 11 U.S.C. § 727(a)(2).

      2.   <u>Whether Defendant Charles Noriega should be denied a discharge under 11 U.S.C. § 727(a)(3)</u>

Under 11 U.S.C. § 727(a)(3), a debtor is not entitled to receive a discharge if:

> the debtor has concealed, destroyed, mutilated, falsified, or failed to keep or preserve any recorded information, including books, documents, records, and papers, from which the debtor's financial condition or business transactions might be ascertained, unless such act or failure to act was justified under all of the circumstances of the case.

11 U.S.C. § 727(a)(3).

Denial of discharge under this subsection requires a showing that 1) the debtor "failed to maintain and preserve adequate records"; and 2) "that the failure made it *impossible* to ascertain [the debtor's] financial condition and *material business* transactions."  *Brown,* 108 F.3d at 1295 (citing *In re Folger,* 149 B.R. 183, 188 (D.Kan. 1992)(emphasis added in *Brown*)).   Fraudulent intent is not a required element under 11 U.S.C. § 727(a)(3).[9]   Nor must the creditor show that the debtor intended to conceal his financial condition.[10]

Plaintiff failed to establish that Defendant Charles Noriega's discharge should be denied under 11 U.S.C. § 727(a)(3) based on a failure to maintain records.   No evidence was presented to suggest that Defendant Charles Noriega concealed or destroyed records, or otherwise failed to keep records from which Mr. Noriega's financial or business transactions might be ascertained.  Mr. Noriega testified that he does not currently own or operate a business and that he has not operated a mechanic's business for several years.  And while the Court might be able to infer,

---

[9] *See Buckeye Retirement Co., LLC v. Bullough (In re Bullough),* 358 B.R. 261, 283 (Bankr.N.D.Tex. 2007)("the creditor does not have to show intent or recklessness.")(citations omitted).
[10] *Meridian Bank v. Alten,* 958 F.2d 1226, 1234 (3d Cir. 1992)(citations omitted).

based on the continuation of the advertisements in the Shopper, that Mr. Noriega generates some income from picking up junked cars, no evidence was presented at trial that would demonstrate that Mr. Noriega realized more than a *de minimis* amount of income from these advertisements.

Plaintiff filed several motions to compel discovery over the course of this adversary proceeding. *See, e.g.,* Plaintiff's Second Demand for Discovery (Docket No. 61); Request to Compell [sic.] by the Court (Docket No. 81), Second Motion to Request to Compell [sic.] by the Court (Docket No. 103). The Court entered several orders requiring Defendants to produce certain documents. *See, e.g,* Order Resulting from Status Conference - Docket No. 96; Order Resulting from Final Hearing on Plaintiff's Objections to Going Forward (Docket No. 86) and Plaintiff's Motion to Compel Discovery (Docket No. 81) - Docket No. 88; Order Resulting from Final Hearing held October 19, 2011 – Docket No. 111. Though the Court required Defendant Charles Noriega to provide Plaintiff with vehicle identification numbers for vehicles he owned from August 1, 2009 through August 6, 2010 to the extent within his possession, custody or control, Defendant Charles Noriega was unable to obtain any records, despite attempting to obtain such information concerning NCIC records from the Motor Vehicle Department in Santa Fe and Roswell. *See* Docket 106. Defendant Patty Grady Noriega's bank account records were admitted into evidence at trial. Defendants also produced telephone records for Patty Grady Noriega. Overall, it appears from the record in this adversary proceeding that Defendants made significant efforts to comply with the Court-ordered discovery. And on the record of the trial, the Court cannot conclude that the Defendant Charles Noriega should be denied a discharge under 11 U.S.C. § 727(a)(3) based on a failure to keep or maintain records.

   3. Whether Defendant Charles Noriega should be denied a discharge under 11 U.S.C. § 727(a)(4)

Under 11 U.S.C. § 727(a)(4), a debtor is not entitled to receive a discharge if:

13

> the debtor knowingly and fraudulently, in or in connection with the case –
> (A) made a false oath or account[.]

11 U.S.C. § 727(a)(4)(A).

To deny a debtor's discharge under 11 U.S.C. § 727(a)(4), the creditor must prove: (1) that the debtor made a statement under oath; (2) that the statement was false; (3) that the debtor knew the statement was false when he made it; (4) that the debtor fraudulently intended to make the statement; and (5) that the statement materially related to the bankruptcy case. *McVay v. Perez (In re Perez),* 411 B.R. 386, 401(D.Colo. 2009)(citing *Garrett v. Vaughan (In re Vaughan),* 233 Fed.Appx. 783, 785 (10th Cir. 2007)). A debtor's statement of financial affairs and schedules must be verified.[11] Statements contained in a debtor's bankruptcy statements and statement of financial affairs, as well as omissions from a debtor's bankruptcy statements and statement of financial affairs, can constitute false oaths within the meaning of 11 U.S.C. § 727(a)(4).[12] A statement or omission is "material" for purposes of 11 U.S.C. § 727(a)(4), "'if it bears a relationship to the bankrupt's business transactions or estate, or concerns the discovery of assets, business dealings, or the existence and disposition of his property.'" *United States Trustee v. Garland (In re Garland),* 417 B.R. 805, 814 (10th Cir. BAP 2009)(quoting *Chalik v. Moorefield (In re Chalik),* 748 F.2d 616, 618 (11th Cir. 1984)). Materiality for purposes of 11 U.S.C. §

---

[11]*See* Rule 1008, Fed.R.Bankr.P. ("All petitions, lists, schedules, statements and amendments thereto shall be verified or contain an unsworn declaration as provided in 28 U.S.C.§ 1746."). Section 1746 of Title 28 provides that wherever a matter is to be supported by verification, "such matter may, with like force and effect, be supported . . . by the unsworn declaration ,. . . verification, . . . in writing of such person which is subscribed by him, as true under penalty of perjury . . . ." 28 U.S.C. § 1746.

[12]*See In re Mulholland,* 2011 WL 4352293, *4 (Bankr.D.N.M. Sept. 16, 2011)("Omissions as well as affirmative statements made in a debtor's Statement of Financial Affairs and Schedules constitute statements under oath and can constitute a false oath for purposes of Section 727(a)(4)(A)(citations omitted); *In re Phillips,* 2010 WL 6259975, *6 (9th Cir. BAP Apr. 6, 2010), *aff'd* __ Fed.Appx. __, 2011 WL 5929010 (9th Cir. 2011)("A false statement or omission in the debtor's bankruptcy schedules or statement of financial affairs can constitute a false oath.")(citation omitted); *Baccals Realty, Inc. v. Fink (In re Fink),* 351 B.R. 511, 525 (Bankr.N.D.Ill. 2006)(acknowledging that "[a] debtor's petition, schedules, and statement of financial affairs all constitute statements under oath for purposes of § 727(a)(4)" and that material omissions from a debtor's schedules made with intent to mislead creditors and the trustee regarding the debtor's true financial condition constitutes a false oath under § 727(a)(4))(citing *Britton Motor Serv., Inc. v. Krich (In re Krich),* 97 B.R. 919, 923 (Bankr.N.D.Ill. 1998)).

727(a)(4), is a fairly low standard.[13]   For this reason, "[a] false statement or omission may be

material even in the absence of direct financial prejudice to creditors." *In re Roberts,* 331 B.R.

876, 883 (9th Cir. BAP 2005), *aff'd and remanded by* 241 Fed.Appx. 420 (9th Cir. 2007)(citations

omitted).[14]

Question 1 on the SOFA requests the following information:

> State the gross amount of income the debtor has received from employment, trade, or profession, or from operation of the debtor's business, **including part-time activities** either as an employee or independent trade or business from the beginning of this calendar year to the date this case was commenced. State also the gross amount received during the two years immediately preceding this calendar year.  (emphasis added).

Question 4 on the SOFA requests the following information:

> List all suits and administrative proceedings to which the debtor is or was a party within one year immediately preceding the filing of this bankruptcy case.

Question 18  on the SOFA requests the following information:

> If the debtor is an individual, list the names, addresses, taxpayer-identification numbers, nature of the businesses, and beginning and ending dates of all businesses in which the debtor was an officer, director, partner, or managing executive of a corporation, partner in a partnership, **sole proprietor**, or was **self-employed in a trade, profession or other activity** either full- or part-time within six years immediately preceding the commencement of this case . . .  (emphasis added).

> In response to each of these questions, Mr. Noriega checked the box, "None."  Mr.

Noriega filed his bankruptcy case on August 6, 2010.   Regarding Mr. Noriega's pre-petition

income, the evidence presented at trial suggests that Mr. Noriega may have earned at least some

income from part-time activities as a result of the advertisements he placed in the Shopper during

---

[13]*Gray v. Gray (In re Gray),* 295 B.R. 338, 345 (Bankr.W.D.Mo. 2003)("The bar for materiality [under § 727(a)(4)] is set fairly low.")(citing *Cepelak v. Sears (In re Sears),* 246 B.R. 341, 347 (8th Cir. BAP 2000)).  *See also, Merena v. Merena (In re Merena),* 413 B.R. 792, 814 (Bankr.D.Mont. 2009), *aff'd,* 2009 WL 4914650 (9th Cir. BAP 2009)("'Materiality [under § 727(a)(4)] is broadly defined.'")(quoting *In re Wills,* 243 B.R. 58,  62 (9th Cir. BAP 1999)).

[14]*See also, Job v. Calder (In re Calder),* 93 B.R. 734, 738 (Bankr.D.Utah. 1988), *subsequently aff'd,* 907 F.2d 953 (10th Cir. 1990)("The materiality of the false oath or account does not require that any of the creditors were prejudiced by the false statement.").

the year preceding the petition date.   However, no evidence was presented that would establish how much income Mr. Noriega actually earned.   The evidence presented at trial also demonstrated that there were two lawsuits to which Mr. Noriega was a party that were pending within one year preceding the petition date:  the State Court Injunction Action; and the State Court Action filed by Paula Beverage against Charles Noriega.[15]  Finally, the evidence presented at trial demonstrated that Mr. Noriega more likely than not operated a business or sole-proprietorship within six years of the petition date.  None of these items were disclosed on the SOFA.[16]

"Section 727(a)(4) is designed to ensure that the debtor provides honest and reliable information to the trustee and others interested in the administration of the bankruptcy estate without their having to conduct costly investigations to discover the debtor's true financial condition."  *Gianstate & Cobb, LLC v. Singh (In re Singh),* 433 B.R. 139, 154 (Bankr.E.D.Pa. 2010)(citing *Retz,* 606 F.3d at 1196-1197 (remaining citation omitted)).  However, the Court will not deny a debtor's discharge where the mistake is the result of mere inadvertence or mistake,[17]

---

[15] The State Court Criminal Action was filed against Charles Noriega in 2007.  *See* Eixhbit 355 – 356.  Mr. Noriega filed his bankruptcy case on August 6, 2010.   None of the Exhibits relating to the State Court Criminal Action are dated after August 7, 2009.  To the contrary, Exhibit 340 reflects that the charges were dismissed in May of 2008, and that the last activity in the case was the withdrawal of a motion for return of seized property in May of 2009.  Thus there is no evidence before the Court that the State Court Criminal Action was pending within one year of the petition date.

[16] At trial, Plaintiff questioned Defendant Charles Noriega about a handwritten list of vehicles, including the vehicle identification number, make, model, and year for each vehicle.  *See*  Exhibit 566.  These nineteen vehicles are identical to the list of vehicles listed on Exhibit A to the Order Modifying Sealing Order entered in the State Court Injunction Action on January 11, 2008.  *See* Exhibit 420 – 423.   The Order Modifying Sealing Order designated these vehicles as Defendant Charles Noriega's "personal vehicles."  *Id.*

        When questioned about these vehicles, Defendant Charles Noriega testified that these cars are from "four or five years ago", and that he probably "junked them or something."   No other evidence was presented that would establish the location of these vehicles as of the petition date.   Nor was Defendant Charles Noriega's Schedule B – Personal Property admitted into evidence.  Consequently, there is no evidence before the Court from which the Court could find that Defendant Charles Noriega knowingly and fraudulently omitted vehicles from his bankruptcy schedules.

[17] *See Brown,* 108 F.3d at 1294 (recognizing that "we must not penalize the debtor for an inadvertent mistake.").

16

or even ignorance or carelessness.[18]  Carelessness, ignorance, inadvertence, or mistake will not

suffice to deny the discharge under 11 U.S.C. § 727(a)(4) because the statute requires *actual,* not

merely constructive, fraudulent intent.[19]  The creditor bears the ultimate burden of proof under

11 U.S.C. § 727(a)(4);  however, once the creditor has demonstrated that the debtor's schedules

or statement of financial affairs contains a false statement, the burden of going forward shifts to

the debtor to show that the omission was the result of an honest mistake, or otherwise to provide

a credible explanation for the false statement.[20]

     The evidence demonstrated that Defendant Charles Noriega's SOFA contains several

omissions.  At trial Mr. Noriega did not explain why he failed to list in his SOFA the two

lawsuits, his mechanics and towing businesses conducted within the six years preceding the

filing of his bankruptcy case, or any income he may have earned as a result of the advertisements

placed in the Shopper during the year before the filing of his bankruptcy case.  On the other

hand, he was not asked to give any such explanation.  The cumulative effect of multiple

omissions from a debtor's schedules and statement of financial affairs, including the failure to

list pending lawsuits, can support a determination of non-dischargeability under 11 U.S.C. §

---

[18]*See Roberts,* 331 B.R. at 884 ("[a] false statement resulting from ignorance or carelessness does not rise to the level of 'knowing and fraudulent.'")(citation omitted); *Melarango v. Ciotti (In re Ciotti),* 448 B.R. 694, 704 (Bankr.W.D.Pa. 2011)(observing that "[e]ven a false statement resulting from ignorance or carelessness does not rise to the level of 'knowing and fraudulent' sufficient to deny a discharge.")(citing *In re Oliver,* 414 B.R. 361, 374 (Bankr.E.D.Tenn. 2009)); *Patrick v. Lewis (In re Lewis),* 2007 WL 4591960, *20 (Bankr.D.Mont. Dec. 28, 2007)(concluding that there was no evidence that the debtors had "the training, experience, acumen, or ability to engage[] in a 'carefully orchestrated attempt' to not disclose the true state of their financial affairs" and found that the evidence reflected ignorance and perhaps carelessness which was not sufficient to rise to the level of knowing and fraudulent intent, or even to the level of recklessness.)

[19]*See Merena,* 413 B.R. at 815 (stating that "[t]he requisite fraudulent intent "must be actual, not constructive.'")(quoting *Wills,* 243 B.R. at 64 (citing *Devers v. Bank of Sheridan, (In re Devers),* 759 F.2d 751, 753 (9th Cir. 1985)).

[20]*See Chase v. Harris (In re Harris),* 385 B.R. 802, 805 (1st Cir. BAP 2008)("Once it reasonably appears that the debtor made a false oath, the burden shifts to the debtor to come forward with evidence that she has not committed the offense charged.")(citations omitted); *Torgenrud v. Schmitz (In re Schmitz),* 224 B.R. 149, 151 (Bankr.D.Mont. 1998) (explaining that "while the initial burden lies on the objector to prove that the debtor made a false statement in connection with the proceedings, once it 'reasonably appears that the oath is false, the burden falls on the bankrupt' to disprove the allegation.")(quoting *Scimeca v. Umanoff,* 169 B.R. 536, 542 (D.N.J. 1993), *aff'd,* 30 F.3d 1488 (3rd Cir. 1994)(remaining citations omitted)).

727(a)(4).[21]  Ultimately, the Court's determination of whether to deny a debtor's discharge under 11 U.S.C. § 727(a)(4) often depends on the demeanor and credibility of the debtor in explaining the reasons for failing to make full and complete disclosures.[22]

Here, the Court is left with the undeniable fact that the Defendant Charles omitted several items from his SOFA.   No explanation for these omissions was either solicited or provided at trial.  The omissions materially related to Mr. Noriega's bankruptcy case inasmuch as they relate to his former business affairs and transactions.   The post-petition allegations in the State Court Injunction Action that Defendant Charles Noriega continued to conduct his business in violation of the injunction would have alerted the Chapter 7 Trustee of the possibility of estate assets. Would the Chapter 7 Trustee's knowledge of the pending lawsuits have made a difference in the administration of the Defendant's bankruptcy case?  It is hard to say.  The evidence presented at trial did not show that Defendant Charles Noriega received any significant income during the year preceding the filing of his bankruptcy petition.  Mere allegations in the ongoing State Court Injunction Action are insufficient to establish that Defendant Charles Noriega continued to own and operate a business with assets that would be considered property of the bankruptcy estate. Mr. Noriega's omission from the SOFA of his businesses conducted within the past six years is at least arguably consistent with his position that the state shut his business down and seized his assets in 2004.

---

[21] *See, e.g., In re Moreo,* 437 B.R. 40 (E.D.N.Y. 2010)(holding that the debtor's failure to list three lawsuits in the debtor's schedules constituted a false oath  sufficient to deny the debtor's discharge under 11 U.S.C. § 727(a)(4)); *Tillery v. Hughes (In re Hughes),* 184 B.R. 902, 910 (Bankr.E.D.La. 1995)(debtor's failure to list several lawsuits, combined with his failure to disclose business involvement and failure to list correct address supported denial of discharge under 11 U.S.C. § 727(a)(4)).  *See also, Gray,* 295 B.R. at 344 (noting that "[a] series or pattern of errors or omissions may have a cumulative effect giving rise to an inference of an intent to deceive [under § 727(a)(4)]")(citing *Beaubouef v. Beaubouef (In re Beaubouef),* 966 F.2d 174, 178 (5th Cir. 1992)).
[22] *See Mercantile Peninsula Bank v. French (In re French),* 499 F.3d 345, 3453-354 (4th Cir. 2007)("[I]n evaluating a § 727(a)(4)(A) claim, 'a determination concerning fraudulent intent depends largely upon an assessment of the credibility and demeanor of the debtor.'")(quoting *Williamson v. Fireman's Fund Ins. Co.,* 828 F.2d 249, 252 (4th Cir. 1987)).

Generally, the Court finds Mr. Noriega's testimony offered at trial to be credible. He did not deny that the pending lawsuits exist, or that the State of New Mexico seized his property. He simply stated that he is just waiting for those lawsuits to finish so that he can get on with his life. Because he answered "None" in response to ALL of the questions on the SOFA, it is quite possible that Defendant Charles Noriega did not carefully read the SOFA before filling it out and not believe any of those questions applied to him. He did not have the benefit of counsel to assist him in understanding the bankruptcy process. Under these circumstances, the Court finds that Defendant Charles Noriega's omissions were the result of either carelessness or ignorance and do not rise to the level of "knowingly fraudulent" for purposes of denying the Defendant Charles Noriega's discharge under 11 U.S.C. § 727(a)(4).

B. Non-dischargeability under 11 U.S.C. § 523(a)(6)

A debt arising as a result of "willful and malicious injury by the debtor to property of another" is non-dischargeable under 11 U.S.C. § 523(a)(6). 11 U.S.C. § 523(a)(6). To prevail under this subsection, a creditor must demonstrate, by a preponderance of the evidence[23], that the debtor both 1) intended the act that caused the injury; and 2) intended the harm.[24] The

---

[23]*Dorr & Associates v. Pasek (In re Pasek),* 129 B.R. 247, 251 (Bankr.D.Wyo. 1991), *judgment aff'd by* 983 F.2d 1524 (10th Cir. 11993)(noting that "the creditor's burden of proof in establishing a willful and malicious injury within the meaning of 11 U.S.C. § 523(a)(6) must be met by only the preponderance standard . . .")(citing *Grogan v. Garner,* 498 U.S. 279, 111 S.Ct. 654, 112 L.Ed.2d 755(1991)(establishing preponderance of the evidence standard for dischargeability claims))

[24]*See Kawaauhau v. Geiger,* 523 U.S. 57, 61, 118 S.Ct. 974, 140 L.Ed.2d 90 (1998)(explaining that the "willful" requirement requires "a deliberate or intentional *injury*, not merely a deliberate or intentional *act* that leads to injury.")(emphasis in original). *See also, Hernandez v. Dorado (In re Dorado),* 400 B.R. 304, 311 (Bankr.D.N.M. 2008)(explaining that "'[w]illful' and 'malicious' under 11 U.S.C. § 523(a)(6) are two, distinct elements.")(citing *In re Gagle,* 230 B.R. 174, 179 (Bankr.D.Utah 1999) and *In re Longley,* 235 B.R. 651, 655 (10th Cir. BAP 1999)). The "malicious" component of 11 U.S.C. § 523(a)(6) "requires that an intentional act be 'performed without justification or excuse.'" *Tso v. Nevarez (In re Nevarez),* 415 B.R. 540, 544 (Bankr.D.N.M. 2009)(quoting *Gagle,* 230 B.R. at 181).

19

conversion of a creditor's assets contrary to the creditor's security interest can constitute a non-dischargeable debt under 11 U.S.C. § 523(a)(6).[25]

There is no evidence before the Court that Defendant Charles Noriega converted any property belonging to Plaintiff. Consequently, Plaintiff is not entitled to a determination of non-dischargeability under 11 U.S.C. § 523(a)(6). Plaintiff's debt is represented by the judgment entered in the State Court Action. That judgment, which was entered against Mr. Noriega by default, is based on a debt arising from a promissory note. *See* Exhibit 542. A mere failure to pay does not automatically give rise to a non-dischargeable debt.[26]

## CONCLUSION

Based on the foregoing, the Court concludes that Defendant Charles Noriega is eligible to receive a discharge. Plaintiff's significant efforts to demonstrate, through over five-hundred exhibits, that Defendant Charles Noriega operated a lucrative business during the year preceding the filing of his bankruptcy case, or that Defendant Charles Noriega transferred or concealed assets with intent to hinder, delay, or defraud creditors, fell short of the standard of proof required to sustain a claim for denial of discharge. And while the evidence sufficiently demonstrated that Defendant Charles Noriega failed to completely and accurately respond to all questions on his SOFA, the surrounding facts and circumstances were not sufficient for the Court to infer that the omissions were both knowingly and fraudulently made. Consequently, the Court will not deny the Defendant Charles Noriega's discharge under 11 U.S.C. § 727(a)(4). Finally,

---

[25]*See Dorado,* 400 B.R. at 311 (acknowledging that "[c]onversion of property of another can serve as grounds for non-dischargeability under 11 U.S.C. § 523(a)(6).")(citing *Longley,* 235 B.R. at 657 and *Bank of Utah v. Auto Outlet, Inc. (In re Auto Outlet, Inc.),* 71 B.R. 674, 676 (Bankr.D.Utah 1987)).

[26]*See Allison v. Roberts (In re Allison),* 960 F.2d 481, 484 (5th Cir. 1992)(stating that "a promise to perform acts in the future is not considered a qualifying misrepresentation merely because the promise subsequently is breached.")(citations omitted).

Plaintiff presented no evidence to support her claim that Defendant Charles Noriega's debt to her was the result of a willful and malicious injury within the meaning of 11 U.S.C. § 523(a)(6).

This Memorandum Opinion constitutes the Court's findings of fact and conclusions of law entered in accordance with Rule 7052, Fed.R.Bankr.P. The Court will enter a separate judgment consistent with this Memorandum Opinion.

_____
ROBERT H. JACOBVITZ
United States Bankruptcy Judge

Date entered on docket: March 9, 2012

COPY TO:

Paula A. Beverage
Plaintiff
105 N. Missouri Ave.
Roswell, NM 88203

Charles E. Noriega
Defendant
1801 N. Union Ave.
Roswell, NM 88201

Patty Grady Noriega
Defendant
1801 N. Union Ave.
Roswell, NM 88201